Cindy **KLEPPICK, et al., Plaintiffs,**

v.

**PENNSYLVANIA TELEPHONE GUILD, Gale Dreves, James Bryne, John Zawackis, John Petrini, Frances Rotkiske, and Diana McCracken, Defendants.**

Civ. A. No. 85–2344.

United States District Court, W.D. Pennsylvania, Civil Division.

March 19, 1986.

---

Stanford A. Segal, Gatz, Cohen, Segal & Koerner, P.A., Pittsburgh, Pa., for plaintiffs.

Ronald Rosenberg, Washington, D.C., for Guild.

Roslyn M. Litman, Litman, Litman Harris & Brown, P.A., Pittsburgh, Pa., for individual defendants.

## MEMORANDUM AND ORDER

SIMMONS, District Judge.

### I. *Introduction*

This cause was heard on motion for a temporary and permanent injunction at hearings on October 8, and 15, 1985. Plaintiffs seek to enjoin a referendum presented to members of the Defendant Pennsylvania Telephone Guild (PTG) on the question of whether the PTG should or should not affiliate with the Communications Workers of America (CWA).

Pursuant to the agreement of the parties and approval of this Court, said referendum was submitted to the PTG membership on October 9, 1985. The ballots, however, were not counted and were immediately impounded pending the outcome of this case.

### II. *Procedural Background*

On October 2, 1985, Plaintiffs filed a complaint along with a motion for preliminary injunction in the above-captioned case. The complaint is based on §§ 101, 102 and 501 of the Labor Management Reporting and Disclosure Act, 29 U.S.C., §§ 411, 412 and 501[1] and essentially seeks to enjoin the referendum on CWA affiliation or any other referendum and also seeks to enjoin the counting of any ballots which resulted from the referendum of October 9, 1985, unless and until the PTG made full disclosure of all material facts to PTG members and until PTG complied with all applicable provisions of the PTG Constitution. Plaintiffs further prayed that this court award them compensatory damages, punitive damages, and reasonable attorney's fees and costs.

---

1. This Court notes that plaintiffs have failed to follow the procedural requirements of Section 501(b), which provides in pertinent part that no proceeding "shall be brought except upon leave of the court obtained upon verified application and for good cause shown." Plaintiffs have not requested such leave to proceed against the individual defendants by verified application or in their complaint.

As above indicated herein, on October 8, 1985, a conference/hearing was held before this court pursuant to Plaintiffs' Motion. Because of the Court's unavailability for a hearing on the merits prior to the scheduled October 9, 1985 referendum, an agreement was entered into between all of the parties with the approval of this court, to allow the referendum to take place on said date, but the ballots were impounded and said ballots were placed in the custody of an independent third party for safe-keeping.

A status quo was thus created, preserving to plaintiffs their right to pursue their claim in this Court without prejudice, while, at the same time, the defendants' alleged right to have a referendum was not infringed.

On October 15, 1985, a full hearing was held on the merits of this case. At the October 15th hearing the parties proffered extensive evidential materials, including exhibits and depositions and affidavits of parties and witnesses. On the basis of all the evidence and arguments of counsel this Court will now proceed to consider the issues presented.

### III. *Undisputed Facts*

The PTG is a Pennsylvania union of telephone workers with approximately 3,800 members which has existed since the 1940's. In early 1985, the leadership of the PTG entertained and considered affiliation proposals from the CWA and the International Brotherhood of Electrical Workers (IBEW). After meeting with representatives of both unions and negotiating affiliation proposals with both unions, the PTG Executive Board, consisting of the six individual defendants in this action, decided to recommend that the membership of the PTG affiliate with the CWA.

The question of whether the CWA affiliation agreement should be put to a referendum vote of the membership was discussed at regional division council meetings. The Western Regional Division council meeting was held on July 10, 1985, at the Northway Mall on McKnight Road near Pittsburgh. In attendance at this meeting were Plaintiffs Carol Coultas, Mary Palfy and Mary Ann Pranic. Mary Palfy attended the meeting in the place of Plaintiff Cindy Kleppick who was ill. All three of the plaintiffs in attendance at the meeting and, in fact, all of the Western Division representatives voted that the CWA affiliation proposal be put to a referendum vote. (Defendants' Exhibit 7) Similarly, all of the Union's regional divisions authorized the Executive Board to proceed with the referendum vote. (Defendants' Exhibits 3 & 4) The vote was then scheduled for October 9, 1985, in order to give the membership ample opportunity to be informed on the relevant issues and to debate the wisdom of affiliation with the CWA.

Thereafter, pursuant to the authorization of the Western Division Council and other regional division councils and pursuant to the PTG Constitution, the Executive Board began to make preparations for the affiliation referendum vote and to disseminate information. Each member was mailed a copy of the affiliation agreement along with explanations of various provisions. (Defendants' Exhibit 13) A number of subsequent mailings by the Executive Board specifically addressed the proposed dues increase and further explained various provisions of the proposed agreement. (Defendants' Exhibits 5 and 40) The Executive Board also distributed copies of the rejected IBEW affiliation agreement so that the members could consider it when making their decision about affiliation with CWA. The PTG Division leaders attended a series of meetings and received additional mailings with information about the affiliation proposal so that they could be in a position to explain the affiliation proposal to the membership and to answer questions. (Defendants' Exhibits 11, 15, 23) All of the plaintiffs, with the exception of Plaintiff Palfy who was not a division chairperson, attended such meetings, and participated in the discussions. There were also a series of membership meetings where the PTG members had the opportunity to meet with union leadership to discuss the CWA proposal and to ask questions.

In mid to late July the plaintiffs contacted representatives of the IBEW. After extensive discussions with the IBEW, plaintiffs decided to initiate a massive effort to defeat the CWA proposal. The IBEW agreed to pay plaintiffs for the time they spent working to defeat the CWA–PTG affiliation. The plaintiffs calling themselves alternatively the IBEW–PTG Volunteer Affiliation Committee and the IBEW–PTG Volunteer Organizing Committee, made a series of mailings to the membership urging rejection of the CWA proposal. These mailings were made at IBEW's expense by means of an IBEW owned PTG membership list. The plaintiffs also began circulating petitions drafted by the IBEW, urging that the PTG conduct the affiliation referendum by secret mail ballot and that the referendum ballot permit the members to choose IBEW affiliation or CWA affiliation. The petitions each received between 200 and 300 signatures. As is evidenced by Plaintiff Kleppick's cover letter transmitting the petitions to the Executive Board, the purpose of the petitions was to cause a delay of the referendum vote.

When it appeared to the plaintiffs and the IBEW that their attempts at persuasion of the members and their attempts at delaying the Union's democratic process were doomed to fail, the IBEW agreed to finance this lawsuit against the PTG and the six members of the Executive Board. (Defendant's Exhibit 25).

The plaintiffs then brought this action requesting that the referendum on CWA affiliation be enjoined. The complaint also leveled serious charges of bad faith, fraud, illicit expenditures of union funds and breaches of fiduciary duty against the six individual defendants.

### IV. *Discussion*

Plaintiffs base their claims primarily on two separate statutes, both of which are part of the Landrum-Griffin Act, or the Labor Management Reporting and Disclosure Act (LMRDA). The first, 29 U.S.C. § 411(a) provides in pertinent part:

§ 411. *Bill of rights; constitution and bylaws of labor organizations*

(a)(1) *Equal rights.* Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws. (2) *Freedom of speech and assembly.* Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations. (3) *Dues, initiation fees and assessments.* Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act (enacted Sept. 14, 1959) shall not be increased and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such

questions, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot ...

The second statute, 29 U.S.C. § 501(a), provides:

§ 501. *Fiduciary responsibility of officers of labor organizations.*

(a) *Duties of officers; exculpatory provisions and resolutions void.*

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

Basically, plaintiffs contend that § 411 guarantees a right to an informed vote, or at least one not made on misinformation because of actions of union officials. They further contend that § 501 creates a duty on the part of union officials to inform the membership fully on any proposed affiliation and to let the individual membership of PTG determine for itself its future course in light of all affiliation proposals and the terms thereof.

Defendants, however, maintain that the membership was provided with extensive information to fully evaluate all affiliation proposals, and urge this court to abstain from interfering in the intra-union affairs of the PTG. This Court is not unmindful of the Third Circuit's admonition that courts must be "careful not to subject the Union's interpretation of its own industrial competence to the removed, untutored, and possibly 'antipathetic' judgment of a court." *Lewis v. American Fed'n of State, County and Mun. Emp.*, 407 F.2d 1185, 1192 (3d Cir.1969). However, the Third Circuit also stated that the Courts "must recognize that judicial timidity or indifference can leave those who seek to exercise their rights helplessly vulnerable." *Id.* Furthermore, total judicial abstention in the instant case may run counter to the traditional role the judicial branch has fulfilled in protecting the exercise of all legitimate rights of union members.

In *Musicians Federation v. Wittstein*, 379 U.S. 171, 182–183, 85 S.Ct. 200, 307, 13 L.Ed.2d 214, 221 (1964), the Supreme Court stated:

The pervading premise of both these titles [Title I and Title IV, LMRDA] is that there should be full and active participation by the rank and file in the affairs of Union.

This Court further subscribes to the reasoning in *Sertic v. District Council of Carpenters*, 423 F.2d 515, 521 (6th Cir. 1970), that "union members are entitled under the Act to the right of a meaningful vote ...". A meaningful vote is not a deliberately uninformed vote, because as such there is no choice to be made by the membership. It would be a chimerical to hold that Congress guaranteed an equal right to vote on Union affairs pursuant to § 411 without also guaranteeing that the processes of enlightment be kept open.

Accordingly, in *Blanchard v. Johnson,* 388 F.Supp. 208 (1975), *Rev'd on other grounds,* 532 F.2d 1074 (6th Cir.) *cert. denied* 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976), the Court stated:

[T]he duties created in § 501(a) must include the duty to keep the membership informed on matters which they, the rank and file, must decide. That is not meant to say that union officials may not state their own views and take a stand on the issues. They must not, however, use their own right to discuss union matters as an excuse to withhold pertinent, relevant information. It is the duty of the union leadership under § 501, as fiduciaries, to see that the lines of communication and dissemination of view and opinions are kept open and working, especially as to matters on which members will be asked to vote.

388 F.Supp. at 214.

In the instant action, Plaintiffs specifically allege that the individual Defendants:

1. Denied to Plaintiffs and the members of the PTG the right to participate in the affairs of the PTG by withholding material information from them. The complaint further charges that the information withheld was specifically

   (a) that the affiliation proposal would result in a dues increase;

   (b) the specific effect of the PTG affiliation on PTG autonomy;

2. Improperly expended funds in furtherance of the October 9 referendum;

3. Employed an improper balloting procedure;

4. Failed to properly act on Plaintiffs' petitions.

■ The charge that Defendants prevented Plaintiffs and Guild members from participating in the democratic Guild election is clearly unsupported by the record. A full and fair debate on the CWA affiliation was held by *all* members. The actual CWA affiliation agreement was distributed to the entire PTG membership so that they could determine what its adoption would mean to their membership in the PTG. The individual Plaintiffs also had complete access to all of the members and were able to attend a number of meetings, address the membership, and attempt to pursuade the members by mailings. Moreover, the PTG Executive Board even provided the members with a copy of the rejected IBEW affiliation agreement and IBEW representatives were permitted to attend membership meetings and to speak out against PTG/CWA affiliation.

■ Plaintiffs' charge that the individual Defendants withheld material information regarding the proposed dues increase and the effect of the PTG affiliation of PTG autonomy is also unsupported by the records. The record clearly indicates that at least six weeks prior to the scheduled referendum vote each member was sent and/or received a copy of the proposed CWA affiliation agreement. Through a series of mailings and meetings every member received pertinent information and explanations of all provisions and/or procedures. One mailing, in particular, unambiguously stated that, "CWA's dues are higher than the Guilds." (Defendants' Exhibit 40, page 3). Members were also provided with copies of the CWA Constitution, along with CWA affiliation agreement, which clearly disclosed the effect of the agreement on the autonomy of the PTG.

■ This Court further notes that Plaintiffs, along with other Division chairpersons, overwhelmingly voted in favor of submitting the referendum on CWA affiliation to the membership and yet charge in the Complaint that expenditures in furtherance of the very action they authorized were in bad faith. Plaintiffs' allegation that the individual Defendants improperly expended funds in furtherance of the October 9, 1985 referendum is therefore without merit.

■ Further, Plaintiffs' Argument that the balloting procedure is fraudulent is moot. After lengthy negotiations supervised by this Court, Plaintiffs and Defendants agreed upon safeguards to protect the balloting process. All parties had an opportunity to air their concerns with the

Court and reached a satisfactory agreement in accord with the PTG Constitution and with the approval of this Court.

■ Plaintiffs' Argument that Defendants' failure to honor Plaintiffs' Petition is a breach of fiduciary duty is also specious. The petitions at issue were actually drafted by Mr. William Davis, a top official with the IBEW, and the IBEW General Counsel, who then persuaded the Plaintiffs to present them as though they were PTG member petitions. Thus, the petitioners were in fact the IBEW, not the Plaintiffs. Plaintiffs should pursue their right in a genuine belief that they are trying to vindicate their rights as union members for the sake of the Union (PTG) and for the sake of their rights as PTG members, and are not permitted to pursue an alleged legal claim, as in this case, as a tactic to advance the interests of a rival union (IBEW).

Further, Article VIII of the PTG Constitution, which regulates the treatment of petitions by the Executive Board, provides:

When two-fifths of the members of any Local Unit, District or Division or the Guild by petition, requests action on any specific matter, the proposition contained in the petition shall be submitted to a referendum vote *of the members thereof.* The petition shall, as a condition for its recognition, clearly state the matter or matters which the signers wish to have submitted for a referendum vote, together with the supporting reasons and facts. The particular Body involved shall refer the petition to its Membership affected thereby shall decide the issue. No such petition shall be recognized, however, if it results in an amendment to this constitution unless it complies with the amendment procedures herein specified. (Emphasis supplied)

In this case the petitions were addressed to the Guild (PTG) and requested that the entire Guild take certain actions. The first petition acknowledged in its first recital that the PTG was taking a membership vote on whether the "Guild should affiliate with another labor organization" and made the following resolution:

We the undersigned members of the PTG, hereby petition the officers to conduct the affiliation vote by secret mail ballot, supervised by the American Arbitration Association.

The second petition also acknowledged that the PTG was conducting a membership vote and urged the resolution that

We the undersigned PTG members hereby petition the officers of the Guild to issue a single ballot which permits voters to choose between affiliation with CWA and affiliation with IBEW.

Article VIII recognizes that different petitions will affect the entire PTG or various subdivisions of the PTG. For mandatory Board action the petition must contain signatures of two-fifths of the members of the particular subdivision or the PTG itself, whichever body is involved. The petition submitted by Plaintiffs acknowledge that they are addressing Guild business. They Further request the officers of the PTG to take action which impacts the entire PTG membership.

When, after nearly a month of distribution, Plaintiffs were unable to obtain the signatures of even 10% of the PTG membership, they submitted the petitions and demanded that the referendum election be postponed. (Defendants' Exhibit 36) Although the petitions simply contain names of PTG members unidentified by unit, district or division subdivisions. (Defendants' Exhibits 37 and 38) the Plaintiffs charge that because a thorough search of the petitioners names would indicate that there is at least two-fifths of one subdivision of the Union represented as signatories, that either the entire PTG should be forced to comply with the petition or that the PTG should give a separate referendum ballot to that subdivision which signed the petition. Plaintiffs' position is clearly contrary to the petitions proffered. The petitions unquestionably purport to be *PTG* petitions; the signatories are identified only as *PTG* members; and the action requested would affect the entire PTG. The petitions further did not receive the required two-fifths of the members' signatures, as mandated by the PTG Constitution.

Although the Third Circuit interprets § 501 broadly, holding that Union Officers' actions which deny the general membership participation in the affairs of the Union constitute a breach of fiduciary duty and thus a violation, *See, e.g. Sabolsky v. Budzanoski*, 457 F.2d 1245 (3d Cir.1972), there is no liability on Union Officers for a breach of fiduciary duty in this case, where there is only an apparent good faith difference of opinion of the membership as to the interpretation of the Union Constitution. *See, e.g. Keck v. Employers Independent Association*, 387 F.Supp. 241 (E.D.Pa. 1974).

■ The Union Officers' interpretation of its own Constitution is entitled to judicial deference, unless the interpretation is "patently unreasonable." *Local 334, etc v. United Ass'n of Journeymen, ETC.*, 669 F.2d 129, 130 (3d Cir.1982).

■ In the light of the foregoing discussion, this Court concludes that the PTG Executive Board's interpretation of the PTG Constitution with respect to the petitions was reasonable. This Court further concludes that the Executive Board's interpretation of the PTG Constitution relative to the potential loss of PTG autonomy and a proposed dues increase is also reasonable, being well supported by case law. Contrary to Plaintiffs' contentions, the potential for loss of PTG autonomy resulting from a vote on CWA affiliation does not preclude such a vote. See *Kec, v. Employer Independent Ass'n, supra*. Further, neither the PTG Constitution nor LMRDA requires that a question of a dues increase which would result from affiliation with the CWA must be voted on separate ballots. *See, e.g., Sheldon v. O'Callaghan*, 497 F.2d 1276 (2d Cir.1974); *White v. Laborers Local 942*, 90 F.R.D. 368 (D.Ala. 1981); *Brooks v. Local 30, Title Workers*, 46 LRRM 2994 (E.D.Pa.1960).

The concept of union self-determination, as reflected in the spirit of our national labor policy, compels the courts to defer to duly elected Union Officials' reasonable interpretation of their own constitution. In *Local No, 1 (ACA) Etc. v. I.B.T., C., W &*

*H*, 419 F.Supp. 263 (E.D.Pa.1976) the court noted that "while all categories of official duties are covered by § 501, the judicial charter under that section to interfere in policy decisions of labor leaders is narrow. Neither the fiduciary duty provision nor any other law authorizes a court to decide whether internal union decisions are right or wrong, wise or unwise." *Id.* at 274. Moreover, in *Sheldon v. O'Callaghan*, 497 F.2d 1276, 1282 (2d Cir.1974), the Second Circuit stated:

> The duly elected officers of a union have a right and responsibility to lead, and to give the members the benefit of their advice on questions that arise.

*See also Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir.1964) ("[T]he internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act.")

■ The purpose of § 501 is not to provide judicial oversight of Union decisions, but to redress unreasonable and arbitrary action of Unions. The record in this case makes it clear that no such unreasonable and arbitrary action occurred. This Court therefore holds that the actions of the individual Defendants were not in violation of their fiduciary obligations under 29 U.S.C. § 501.

## V. *Conclusion*

This Court concludes that all matters relative to the referendum on CWA affiliation were fully disclosed by the Defendants. Further, the individual Defendants' interpretation of the PTG Constitution was clearly reasonable, and this Court will not, as urged by Plaintiffs, "subject the Union's interpretation of its own industrial jurisprudence to the removed ... judgment of a Court." *Lewis*, 407 F.2d at 1192. Nor will this Court allow Plaintiffs, as surrogates for a rival Union, to circumscribe the rights of PTG members to democratically determine the course of their organization. "Only a Union responsive to the rights of *all* its members can achieve the ideals of responsibility, opportunity and self-determination that are recognized as fundamental values of the labor movement." *Navarro*

*v. Gannon,* 385 F.2d 512, 518 (2d Cir.1967) (Emphasis added).

Moreover, this Court is guided by the equitable maxim that "he who comes into equity must come with clean hands." "This maxim is a self-imposed ordinance that closes the doors of a Court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the Defendant." *Precision Co. v. Automotive Co.,* 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed 1381 (1945). Here the Plaintiffs' hands are clearly unclean because they are not representing the real interests of PTG, but to the contrary they are admittedly representing a rival Union (IBEW) which seeks to take over PTG.

Accordingly, Plaintiffs' request to enjoin the referendum on affiliation with the CWA is denied. The ballots shall be released and counted in accordance with PTG procedures and federal law.

An appropriate Order will be entered.