Dino **LORENTANGELI**, Frank Forst, Thomas Stiglic, and Local 194, New Jersey Turnpike Employees' Union, International Federation of Professional and Technical Engineers, AFL–CIO, Plaintiffs,

v.

Dominick **CRITELLI**, Michael T. Waske, Rudolph E. Thomas, Vincent C. Cacciotti, Ralph J. McElfresh, Des Cupid, Gregory Junemann, John H. Dunne and Rodney A. Bower, Defendants.

Civ. A. No. 87–3405.

United States District Court, D. New Jersey.

Nov. 20, 1987.

Craig H. Livingston, Ball, Livingston & Tykuls! ~, Newark, N.J., for plaintiffs.

James R. Zazzali, Zazzali, Zazzali & Kroll, Newark, N.J., and Barbara L. Camens, Barr & Peer, Washington, D.C., for defendants.

## OPINION AND ORDER

LECHNER, District Judge.

This is an action brought by Local 194 and three of its members suing nine officers, in their individual capacity, who constitute the Executive Council of the International Federation of Professional and Technical Engineers, AFL–CIO (the "Federation"). The action is brought under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 401–531 ("LMRDA"), specifically 29 U.S.C. § 501(b), which allows a member of a labor organization to sue an officer who is allegedly violating his/her fiduciary duties, after the labor organization or its governing board refuses to bring the action, and after obtaining leave to sue from the district court. Plaintiffs claim defendants have been providing financial assistance to five locals in violation of the Federation's constitution and personally benefitting from these payments, all in violation of their fiduciary duties under 29 U.S.C. § 501(a). Defendants assert plaintiffs' claims are legally and factually unsupportable.

Plaintiffs moved for a preliminary injunction to enjoin defendants from making payments to locals 17, 21, 66, 121 and 195. In their reply brief plaintiffs withdrew their request with respect to locals 21, 66 and 121.[1] Defendants, in addition to opposing the motion for a preliminary injunction, have filed two cross-motions: a motion to dismiss for lack of service of process, and a motion to vacate the order granting plaintiffs leave to sue under section 501(b).

*Facts*

Plaintiffs in this case are Local 194, the New Jersey Turnpike Employees' Union,[2] and three of its members: Dino Loretangeli, Frank Forst, and Thomas Stiglic. Local 194 has been affiliated with the Federation since 1968 and is in good standing.[3]

Defendants are sued in their individual capacities and are the nine members constituting the Executive Council of the Federation. Rodney Bower is the Acting President of the Federation, John H. Dunne is the Secretary–Treasurer, Vincent Cacciotti is the Executive Vice President, and Michael Waske is a Vice President of the Federation and the Business Manager of Local 17. Dominick Critelli, Rudolph Thomas, Ralph McElfresh, Desmond Cupid, and Gregory Junemann are Vice Presidents of the Federation. (Bower Aff., 8/27/87, ¶ 5.)

The Federation is governed by a written constitution. (Plaintiffs' Ex. A; Defendants' Ex. 1.) The constitution prescribes the manner in which the affairs of the Federation shall be conducted and the persons who may conduct those affairs. According to Article V of the constitution, the Convention of the Federation, which meets on even-numbered years, is "the supreme legislative, judicial and reviewing authority."[4] The Federation's policies and prac-

---

1. The motion remains before the court with respect to the financial assistance given to locals 17 and 195, which receive the largest sums.

2. Local 194 represents over 1,400 employees who work for the New Jersey Turnpike Authority. (Loretangeli Aff., 8/21/87, ¶ 1.)

3. "The Federation is an international labor union based in Silver Spring, Maryland which represents employees in the general technical and scientific fields of engineering, architecture, and many allied occupations. The Federation's purpose is to represent its members in collective bargaining and to otherwise improve their welfare, economic status and conditions of employment." (Bower Aff., 8/27/87, ¶ 1.)

4. With respect to the interpretation of the constitution, Article VII, section nine provides that: "The President shall decide any questions respecting the construction or interpretation of the Constitution.... His/her decisions may be appealed to the Executive Council and thereafter to the Convention. However, pending any such appeal, the President's decision shall be

tices are to be determined by Convention action, except that between conventions, policies and practices are determined by the Executive Council.[5]

The constitution vests certain power in the Executive Council. Article X, section one of the constitution provides: "The Executive Council shall be empowered to authorize such expenditures of the funds of the Federation as in its judgment are necessary to carry out and fulfill the purposes and objectives of the Federation." In particular, Article X, section ten authorizes the Executive Council "to grant strike, lockout or victimization benefits to members and local unions from the funds of the Federation upon terms and conditions established by the Executive Council." The Secretary–Treasurer is given independent appropriation authority with respect to organizing activity.[6]

Article XVIII, section 2, which was added to the constitution in 1933, limits the otherwise plenary appropriation power of the Executive Council. It provides that: "The President and the Executive Council are denied any and all authority to grant special financial assistance in the form of rebates, refunds, etc., to any local union which special concession is not at the same time uniformly accorded all of the other local unions." A recent dispute over the proper interpretation and application of this provision led to the filing of this action.

Plaintiffs point to the language of this provision and argue that while assistance may be given to particular locals for emergency aid or for organizing activities, this provision explicitly prohibits rebates which are not uniformly accorded. Plaintiffs contend the financial assistance received by Locals 17 and 195 following 1984 were re-

bates, given in violation of this provision. (*See* Transcript of Proceedings, 9/14/87, pp. 11–13.) Defendants point to the practices of the Federation over the years and contend the provision was only intended to ensure all assistance was granted in an even handed manner for legitimate union activities. Defendants assert the assistance given to Locals 17 and 195 in recent years is in accord with the Federation's long-standing practices, which reflect the proper interpretation of this constitutional provision.

Over the years the Federation has provided assistance to locals in various forms. The officers of the Executive Council assert all local unions are dealt with fairly and equally. Decisions on what form of assistance, if any, will be provided by the Federation are based on factors such as the specific needs of the requesting local union, the availability of the Federation's officers and staff, the geographic distance and expense involved, and the legitimate union objectives which can be accomplished. (Bower Aff., 8/27/87, ¶ 11.)

The Council officers and staff members provide direct services such as guidance during contract negotiations, strikes, and other facets of the collective bargaining process. The Federation also assists the local unions in organizing drives. It conducts legal and legislative research for the local unions, and publishes several newsletters and bulletins. (Bower Aff., 8/27/87, ¶ 11.)

The Federation has also provided financial assistance to local unions, either in conjunction with or in lieu of direct servicing assistance. For example, the Secretary–Treasurer has set up organizing programs with local unions and, with Execu-

---

accepted by and be binding upon the Federation, the local unions, other subordinate bodies, and officers and members thereof."

**5.** When not in convention, the administrative authority of the Federation is vested in the following order; (1) the Executive Council; (2) the Executive officers; (3) the President for matters under his/her cognizance, and the Secretary–Treasurer for matters under his/her cognizance; and (4) the appropriate Vice President. Constitution, Article V, section 2.

**6.** Article IX, section 4 of the constitution provides that the Secretary–Treasurer "shall be authorized to establish cooperative organizing activities with the local unions and to assume the payment of a reasonable portion of expenses which may arise in connection therewith; however, such payments shall be made only on the condition that a complete and accurate report of those activities involved are made available to the Federation."

tive Council approval, has offered financial assistance agreements under which the Federation has subsidized a portion of the related expenses. The Federation has made emergency assistance grants to individual locals to defray the costs of arbitration, administrative hearings, strike activity, and similar activity pursued on behalf of the membership. The Executive Council has also rendered financial assistance to newly affiliated local unions, to defray the legal costs associated with the affiliation process. (Bower Aff., 8/27/87, ¶¶ 12–13.)

Defendants contend the assistance agreements at issue in this case are consistent with the constitution because they have been based on the unique needs and the legitimate union goals and activities of the local unions involved. For example, "[l]ocals 17 and 195, which now constitute the two largest locals in the Federation with approximately 4500 members each, attribute their size and strength largely to the organizing and servicing efforts made possible by the [Federation's] financial assistance programs." [7] (Bower Aff., 8/27/87, ¶ 14.) Moreover, defendants assert the challenged assistance agreements

are not a departure from the Federation's practice over many years.

Plaintiffs, on the other hand, contend that while the assistance given to locals 17 and 195 prior to 1984 was for organizing expenses and for emergency assistance, both of which are explicitly authorized in the constitution, (Plaintiffs' Reply, pp. 7–8) the assistance extended to these locals since 1984 is of a different nature and violates Article XVIII's prohibition against "special financial assistance" which is not uniformly accorded to all local unions.

It appears from the record the assistance afforded to locals 17 and 195 at least from 1985 to the present has not in fact been limited to emergency and organizing assistance.[8] However, defendants contend the broad appropriation power of the Executive Council is not limited by the constitution to emergency and organizing assistance, but rather extends to all expenditures which "are necessary to carry out and fulfill the purposes and objectives of the Federation." (Defendants' Ex. 1, Article X, section 1.) Moreover, the record does not conclusively establish whether the financial assistance extended to locals prior to 1984 was limited to organizing and emergency aid.[9]

7. With respect to locals 21, 121 and 66, which are included in the complaint but not in this motion for a preliminary injunction, Mr. Bower also asserts that assistance extended to these locals was proper.

Local 21 in San Francisco has used the assistance to aggressively pursue organizing activity and has made huge gains in Federation membership. ... Local 121, whose remote location in Hawaii makes direct servicing assistance by the Federation's officers and staff logistically and financially unfeasible, has depended on the assistance to fund organizing activity, which has resulted in huge membership gains. Local 66, in New York City, has experienced a huge decline in membership, due to plant closings among private sector employers. Local 66 has employed its financial assistance to bolster organizing efforts to defray the costs of maintaining a union office and to service members....

(Bower Aff., 8/27/87, ¶ 14.)

8. It is not clear from the record whether in 1984 the assistance given to locals 17 and 195 was only used for emergency organizing purposes. The record does show that in 1985, local 17 received $64,125 from the Federation and Local 195 received $16,250 from the Federation. In 1986, Local 17 received $106,529 from the Fed-

eration and Local 195 received $47,180 from the Federation. (Plaintiffs' Ex. B.) It appears the Federation categorized this assistance as "subsidies" and had separate categories for organizing and emergency assistance. (See Plaintiffs' Ex. C.) In December of 1985, the Executive Council agreed to increase the subsidy for Local 195 from an equivalent of 18.1% to 22% of per capita tax paid by the local, in order to assist the local in its effort to service its membership on a statewide basis. (Plaintiffs' Ex. D.)

9. According to defendants, local 17 has been receiving assistance since 1967.

Local 17 ... has boosted its membership from approximately 900 in the 1960's to 4500 today. It has extended its jurisdiction and membership to three states including Washington, Montana and Oregon. The financial assistance helps Local 17 defray the tremendous costs of *servicing* members across the many hundreds of miles within its jurisdiction. The financial assistance also substitutes for the direct servicing, available to other locals, which is unavailable to Local 17 because of its lack of proximity to the Federation's headquarters and staff.

(Dunne Aff., 8/27/87, ¶ 9) (emphasis added). Local 195's assistance began in the early 1980's, following New Jersey's passage of its

Plaintiff Forst asserts that as soon as he became aware of the nature of the assistance which locals 17 and 195 were receiving, he drafted Resolution 28 which was presented at the Federation's 1986 Convention. The Resolution would have acknowledged some of the assistance agreements "may not reflect the intent of the authorization to [Federation] Officers by the Membership," and would have provided for a phasing out of the assistance over a period of five years. (Defendants' Ex. 4.) The Resolution was rejected by the Convention.[10] In response to the issue raised by Mr. Forst, the Convention adopted Resolution No. 3, which directed the Executive Council to provide guidelines for the Federation's assistance to locals.[11]

The Federation has been having financial problems and recently had to cut back its staff and other expenses in order to improve its situation. On May 9, 1987, the Executive Council reviewed an unaudited budget for the fiscal year ending March 31, 1987, which showed a net loss of almost $78,000. The budgets for 1987–88 and 1988–89 projected losses of $68,500 and $69,000 respectively. Mr. Bower, as President, ruled out of order motions to approve these budgets and then resigned. (Plaintiffs' Ex. E.)

The Executive Council meeting was continued on May 29, 1987. Mr. Bower was again appointed President. The Executive Council then adopted an "economic reorganization" plan in order to offset the projected losses. The actions approved included the layoff of three staff members and an adjustment of the financial assistance programs of locals 17 and 195. (Plaintiffs' Ex. F.) With the reorganization, the Federation's projected budget for 1987–88 shows a net loss of $2,000, and the budget for 1988–89 shows a net surplus of $72,000. (Defendants' Ex. 6.)

Plaintiffs assert the Federation's financial problems have been to a great extent caused by the financial assistance given to locals 17 and 195. Furthermore, plaintiffs assert the resulting lay-offs of three of the Federation's professional staff members will seriously hamper the Federation's ability to function effectively.[12] Finally, plaintiffs contend that if the assistance does not cease immediately, the Federation will face a serious threat of insolvency. (Loretangeli Aff., 8/20/87, ¶ 24.)

Defendants claim the financial assistance given to locals 17 and 195 has strengthened rather than weakened the Federation, pointing out these two local have grown to become one third of the Federation's mem-

---

agency shop law. The Federation and the local were concerned about converting "fair share" payers, who then far overshadowed the membership, to full-fledged members. These goals have been largely realized through aggressive "inside" organizing and sustained, effective membership *servicing* which has maintained membership loyalty and strength. (*Id.*, ¶ 11) (emphasis added).

10. Although few of the delegates who opposed the resolution spoke on the Convention floor as to why they opposed it, Mr. Loretangeli believes the resolution was defeated by two groups: those who wanted the assistance to continue and those who wanted it to cease immediately. (Loretangeli Aff., 8/20/87, ¶ 35.)

11. Resolution No. 3 provides:
FEDERATION'S ASSISTANCE TO LOCALS
WHEREAS,
The International Federation employs a headquarters and organizing staff for the purpose of servicing local unions and assisting in collective bargaining and contract administration, and
WHEREAS,

The International Federation may assist local unions financially, often in lieu of direct services,
THEREFORE BE IT RESOLVED:
That the Forty–Seventh Convention direct [sic] the Executive Council to provide guidelines so that Federation assistance and servicing can be provided to local unions in an even-handed and equitable manner.
(Defendants' Ex. 2.)

12. Plaintiffs contend the services provided by the laid off members are so important that the Federation will be irreparably injured. Mr. Loretangeli points out these members were responsible for coordinating organization efforts, coordinating the legal services program, research for local unions, publishing the Federation's newsletter and newspaper, and advising locals during contract negotiations. Mr. Loretangeli contends that with the lay off of these three staff members, the services provided by the Federation will virtually cease, and this may in turn lead locals to disaffiliate and thus threaten the life of the Federation. (Loretangeli Aff., 8/20/87, ¶¶ 18–23.)

bership. (Dunne Aff., 8/27/87, ¶ 11.) Furthermore, defendants contend the economic reorganization plan will remedy the Federation's financial problems without harming its ability to function effectively.

After Mr. Forst's effort at the July 1986 Convention to phase out the financial assistance challenged in this action, Mr. Forst continued to urge the officers of the Federation to discontinue the assistance. On August 7, 1986 he wrote a letter to Mr. Bower demanding the assistance be discontinued, and stating if this was not done, Local 194 would institute legal action. (Plaintiffs' Ex. M.) On May 5, 1987, Mr. Forst once again wrote to Mr. Bower to advise him Local 194 had retained an attorney and to urge Mr. Bower to cease the subsidies in question. (Plaintiffs' Ex. N.) On May 22, 1987 Local 194's attorney wrote a letter to Mr. Dunne, the Secretary–Treasurer, demanding the assistance cease and that legal action be brought to secure an accounting and obtain reimbursement of all rebate moneys. (Plaintiffs' Ex. O.) On June 2, 1987 the Federation's counsel wrote a letter to Local 194's attorney on behalf of the Federation and the Executive Council and denied Local 194's request.

On August 20, 1987 plaintiffs finally applied, *ex parte*, for leave to bring this action pursuant to 29 U.S.C. § 501(b). Judge Ackerman found that good cause had been shown and granted plaintiffs leave to sue.

On August 21, 1987, plaintiffs filed their complaint in this action. The amended complaint contains four counts. Count I alleges defendants violated their fiduciary duties under section 501 of the LMRDA, by giving rebates to Locals 17, 21, 66, 121 and 195 contrary to the provisions of the Federation's constitution, thereby injuring the Federation. Count I further alleges defendants refused to initiate action to secure an accounting and reimbursement of these rebate monies. Count II realleges defendants violated their duties under section 501(a) by failing to expend the organization's money in accordance with its constitution.

Count III alleges defendants, Messrs. Critelli and Waske, violated their duties under section 501(a) because they acted in their personal interest and against the interests of the Federation by voting for the rebates in question. Mr. Critelli is a full time, paid official of Local 195, and Mr. Waske is a full time, paid official of Local 17; both individuals are Vice Presidents of the Federation. Count IV alleges that "[b]ecause the interests of the [Federation] and the defendants in the outcome of this action may be adverse, the defendants representation by [the Federation's counsel] and other counsel paid for by the [Federation] violates LMRDA, 29 U.S.C. sec. 501(a)."

The complaint seeks as relief a declaratory judgment that defendants have violated the constitution of the Federation and section 501 of the LMRDA, a permanent injunction prohibiting defendants from continuing to grant the assistance in question, a permanent injunction barring the Federation's counsel from representing defendants in this action, restraining the Federation from paying for defendants' representation, an order that defendants reimburse the Federation for all monies found to be paid in violation of the Federation's constitution, compensatory and punitive damages, and finally, attorneys' fees under 29 U.S.C. § 501(b).

The same day plaintiffs filed their complaint, August 21, 1987, they moved for a preliminary injunction barring defendants Bower and Dunne from making "rebate payments" to certain locals. As mentioned, the motion is now limited to locals 17 and 195. On August 21, 1987 Judge Ackerman signed an Order to Show Cause, requiring defendants to respond to plaintiffs' motion on September 14, 1987.[13] Judge Ackerman further ordered personal service of the Order to Show Cause, together with the Complaint, Motion, Affidavit of Mr. Loretangeli, and Applications for Leave to Sue upon defendants Bower and Dunne, on or before August 25, 1987. Defendants have filed two cross-motions: a

---

**13.** Plaintiffs, while claiming irreparable harm would result unless the injunction was immediately issued, requested an adjournment of their motion.

motion to dismiss for insufficient service, and a motion to vacate the order granting plaintiffs leave to sue under 29 U.S.C. § 501(b).[14]

For the reasons which follow, plaintiffs' motion for a preliminary injunction will be denied. Defendants' motion to vacate the leave to sue order will be granted; the remaining motions are moot.

*Discussion*

A. Preliminary Injunction

For the equitable remedy of a preliminary injunction to be properly granted, the moving party must establish that: (1) there is a reasonable probability it will prevail on the merits; (2) it will be irreparably harmed if the injunction is not granted; (3) granting the injunction will not cause substantial harm to defendants or to other parties interested in the proceedings; and (4) the public interest will be served by the granting of the injunction. *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 959 (3d Cir.1984).

1. *Reasonable Probability of Success on the Merits*

In order to prevail on the merits, plaintiffs must establish defendants have violated their fiduciary duties under section 501(a) of the LMRDA which provides:

The officers ... of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in

any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. § 501(a).

 This Circuit has held the fiduciary principle under section 501 extends to all of the activities of union officials. Under this interpretation, actions which violate the union's constitution are a breach of the fiduciary duty imposed by section 501. *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1250 (3d Cir.), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972). There is, however, no breach of fiduciary duty when there is only an apparent good faith difference of opinion of the membership as to the interpretation of the union's constitution. *Kleppick v. Pennsylvania Telephone Guild,* 631 F.Supp. 1073, 1081 (W.D.Pa.1986) (citing *Keck v. Employees Independent Ass'n,* 387 F.Supp. 241 (E.D.Pa.1974)). "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution and will interfere only where the official's interpretation is not fair and reasonable." *Local 334 v. United Ass'n of Journeymen,* 669 F.2d 129, 131 (3d Cir.1982) (citing *Stelling v. International Brotherhood of Electrical Workers Local Union No. 1547,* 587 F.2d 1379, 1388 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Vestal v. Hoffa,* 451 F.2d 706, 709 (6th Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972)). Thus, the union oficers' interpretation of the union's constitution is entitled to judicial deference, unless the interpretation is "patently unreasonable." *Local 334,* 669 F.2d at 130.

---

**14.** Also before the court is a motion *pro hac vice* for counsel Barbara Camens to appear for defendants. Plaintiffs' attorney, Craig Livingston, Esq., did not oppose the motion.

There were two other motions regarding this case which were returnable on a later date: a motion by the Federation to intervene as a party defendant, and a motion by plaintiffs to disqualify the Federation's counsel from appearing on behalf of defendants.

The purpose of section 501 is not to provide judicial oversight of union decisions, but to redress unreasonable and arbitrary actions. *Kleppick*, 631 F.Supp. at 1081. "[W]hile all categories of official duties are covered by [section] 501, the judicial charter under that section to interfere in policy decisions of labor leaders is narrow. Neither the fiduciary duty provision nor any other law authorizes a court to decide whether internal union decisions are right or wrong, wise or unwise." *Local No. 1 v. International Brotherhood of Teamsters*, 419 F.Supp. 263, 274 (E.D.Pa. 1976).

■ The importance of union self-determination in the national labor policy compels courts to defer to the reasonable interpretation of a union's constitution by the union's duly elected officers. *Kleppick*, 631 F.Supp. at 1081. As the Third Circuit has advised, courts "must avoid overzealous intervention in the internal affairs of unions ..., being careful not to subject the union's interpretation of its own industrial jurisprudence to the 'removed, untutored, and possibly antipathetic judgment of a court.'" *Lewis v. American Federation of State, County and Municipal Employees*, 407 F.2d 1185, 1192 (3d Cir.), *cert. denied*, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed. 2d 120 (1969).

■ There is little likelihood plaintiffs in this case will establish defendants' interpretation of Article XVIII of the Federation's constitution is "patently unreasonable." Article XVIII provides that: "The President and the Executive Council are denied any and all authority to grant special financial assistance in the form of rebates, refunds, etc., to any local union which special concession is not at the same time uniformly accorded all of the other local unions." Taken by itself, the language of this provision appears to be a firm and broad prohibition of "special financial assistance." Plaintiffs focus on the language of this provision and appear to be interpreting this provision apart from the context of the whole constitution and the practicalities of operating the Federation.

Since Article XVIII of the constitution was added in 1933, it has been interpreted by the Federation's officers in conjunction with the other appropriation provisions of the constitution and in light of the proper functions of the Federation. Article X of the constitution gives the Executive Council broad power to expend Federation funds to fulfill the purposes and objectives of the Federation. It also gives the Executive Council authority to grant emergency assistance to locals. Article IX of the constitution gives the Secretary–Treasurer separate appropriating powers with respect to organizing efforts. These provisions of the constitution make it clear that, inspite of the apparently limiting language of Article XVII, the Executive Council has broad authority to expend Federation funds, and that there are situations in which it is expected assistance will be given to some locals depending on their needs and objectives.

It is not "patently unreasonable" to apply Article XVIII according to its clear intent that all locals be assisted on an equitable basis, rather than to apply it as a requirement that any "special financial assistance" given to one local must be matched with an equal sum to all other locals. Furthermore, it is not "patently unreasonable" that the Federation assists locals with respect to various legitimate union activities which is not limited to organizing or emergency assistance. For example, it is reasonable for the Federation to give financial assistance to some locals in lieu of direct services when the lack of proximity makes it unfeasible for the Federation to provide direct services.

This interpretation, adopted by the President, the Executive Council and the Convention, is not "patently unreasonable." It appears to be fair, practical, and consistent with the language and intent of the provision and with the constitution as a whole. Moreover, it is unlikely plaintiffs will prevail on their claim that defendants violated their fiduciary duties by acting contrary to the Federation's constitution, because the record indicates the individual defendants properly followed constitutional procedures.

The constitution provides that the Convention, which meets every other year, is "the supreme legislative, judicial and reviewing authority." Constitution, Article V. Between Conventions, the policies and practices of the Federation are determined by the Executive Council. In particular, the constitution provides that the President of the Federation shall decide questions regarding the interpretation of the constitution, subject to review by the Executive Council and the Convention.

In this case the Convention, acting as the "supreme reviewing authority" of the Federation, had an opportunity to consider the propriety of the financial assistance which is the subject of this action. Resolutions, specifically addressing the assistance to locals, were proposed during the forty-seventh Convention which was held in July of 1986. The Convention adopted a resolution directing the Executive Council to provide guidelines for the Federation's assistance to locals, which were subsequently developed pursuant to this directive. *See* Defendant's Ex. 5. A second resolution was also proposed which would have phased out the financial assistance in question. The Convention, however, failed to adopt that resolution.

Following the forty-seventh Convention, the Executive Council, standing as the highest governing body of the Federation, considered the Federation's budgets for 1987–88 and 1988–89. After the Federation's President rejected budgets which projected significant losses, the Executive Council adopted an economic reorganization which offset the previously projected losses.

The Executive Council's interpretation of Article XVIII of the constitution is not patently unreasonable; the Executive Council acted properly pursuant to the directive of the Convention and under its own constitutional authority. The question presented to this court concerning the interpretation of the Federation's constitution with respect to financial assistance to locals was considered and acted upon by the Convention, the Federation's supreme reviewing authority. Pursuant to the Convention's directive, the Executive Council developed guidelines for the Federation's assistance to be provided to particular locals in an equitable manner. There appears to be no allegation that the Executive Council has deviated from these guidelines. Until the forty-eighth Convention, scheduled for August, 1988, it is proper for the Executive Council to act as the highest ranking governing body of the Federation. Thus, there is little likelihood that plaintiffs will establish that defendants have violated their fiduciary duties by acting contrary to the Federation's constitution.[15]

### 2. *Irreparable Harm*

In order for a preliminary injunction to be properly granted plaintiffs must establish they will suffer irreparable harm if an injunction does not issue. The "requisite is that the feared injury or harm be irreparable—not merely serious or substantial ... the injury must be of a peculiar nature, so that compensation in money cannot atone for it...." *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976).

Plaintiffs contend irreparable harm will occur in two ways. First, they contend money damages will not be an adequate remedy because the amount will be too great for defendants to be able to satisfy a judgment entered against them. Second, they contend the very life of the Federation is at stake. They assert the Federation's financial problems will lead to a substantial decline in membership and affiliated locals, and that the Federation is threatened with insolvency.

In support of their contention that irreparable harm can be established when a mon-

---

**15.** Defendants further assert plaintiffs are unlikely to prevail in this action because it is an equitable action brought under 29 U.S.C. § 501 and is barred by the doctrine of laches. There is some indication in the record plaintiffs were aware that assistance of the kind in question here had been extended to locals for years before this action was brought. Thus, the delay in bringing this action may have harmed defendants. However, because of the finding that plaintiffs are unlikely to succeed on the merits of their claim, it is unnecessary to decide whether this action is barred by the doctrine of laches.

ey judgment may not be collected, plaintiffs cite *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 182 F.Supp. 608 (E.D.Pa.), *aff'd* 284 F.2d 162 (3d Cir. 1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). In *Cohen* the court issued a preliminary injunction prohibiting the expenditure of union funds to pay the legal fees for the defense of union officers who were being sued for fiduciary violations. The court found irreparable harm because there had been no showing on the part of the defendants that they were financially responsible persons who would be able to reimburse the union for funds expended in their behalf. *Cohen,* 182 F.Supp. 608, 617 n. 5 (E.D.Pa.1960). The court based its finding of irreparable harm on its holding that such expenditures were illegal. *See id.* at 617 n. 5 and 620.

As mentioned, plaintiffs are unlikely to succeed in their challenge of the Executive Council's expenditures for assistance given to certain locals. Moreover, it has not been shown here the amount of damages which may be recoverable with respect to such assistance would be so great that it could not be satisfied by the nine members of the Executive Council who are defendants in this case. A court will not grant injunctive relief when the legal remedy may suffice. *See A.O. Smith v. F.T.C.,* 530 F.2d 515, 525 (3d Cir.1976).

Plaintiffs have also failed to establish irreparable harm concerning the Federation's existence or membership. The Federation has adopted an economic reorganization plan in order to improve its financial situation, and part of that plan is to adjust the amount of assistance given to locals 17 and 195. A concrete threat of insolvency has not been shown. On the contrary, defendants have demonstrated that the recently adopted budget has placed the Federation on a solid financial footing. Finally, plaintiffs' predictions of loss of membership are merely speculative and not irreparable; they are insufficient to warrant injunctive relief. *See A.L.K. Corp. v. Columbia Pictures Industries,* 440 F.2d 761, 764 (3d Cir.1971).

#### 3. *Substantial Harm Which May Be Caused By Injunction*

There is a real possibility of harm to the Federation if an injunction is issued abruptly halting the assistance locals 17 and 195 have received for years. Even the Resolution that plaintiff Forst proposed at the 1986 Convention provided for a gradual phasing out of the assistance to these locals. To abruptly halt the assistance may in fact put at risk the effectiveness of two of the largest locals in the Federation, which together constitute one-third of the federation. This may well be harmful to the Federation as a whole.

On the other hand, plaintiffs will not suffer any harm if an injunction is not issued. The Federation has been providing this type of assistance to locals for years, and it is unlikely that plaintiffs will establish this practice is violative of the Federation's constitution. Plaintiffs themselves have not requested assistance, and any damages that would be recoverable for the Federation would be satisfied by a money judgment. Plaintiffs will suffer no harm if their injunctive relief is denied at this time.

#### 4. *The Public Interest*

It is in the public interest that labor unions function effectively for their members. The goal, however, is for unions to govern themselves through their democratic processes; courts should not substitute their judgment for that of the unions' governing bodies. *See Local 334 v. United Ass'n of Journeymen,* 669 F.2d 129, 131 (3d Cir.1982). Because this matter appears to be well within the constitutional authority of the Convention and of the Executive Committee between Conventions, and in fact these bodies have considered and ruled on the matter, it is inappropriate for this court to remove such authority from these deliberative bodies.

Plaintiffs have not established the requirements for a preliminary injunction to be granted. Plaintiffs have not shown they have a reasonable likelihood of succeeding on the merits of their claim. They have not shown they will suffer irreparable harm if an injunction does not issue. On

the contrary, there is a possibility of substantial harm to the Federation and several of its locals if the assistance is abruptly halted by an injunction, and finally, the public interest will be ill served if this court interferes unnecesarily in democratic union decision making.

### B. Motion to Vacate Leave to Sue Order

On August 20, 1987, Judge Ackerman granted, *ex parte,* plaintiffs' application for leave to sue under 29 U.S.C. § 501(b). Section 501(b) provides that "[w]hen an officer ... is alleged to have violated the duties declared in subsection (a) ... and the labor organization or its governing board or officers refuse or fail to sue ... after being requested to do so by any member ... such member may sue such officer.... No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made *ex parte.*" 29 U.S.C. § 501(b).

The requirement of section 501(b) that a plaintiff in such an action show "good cause" before being entitled to file the complaint is intended as a safeguard against harassing and vexatious litigation brought without merit or good faith. *Horner v. Ferron,* 362 F.2d 224, 228 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966) (citing *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 182 F.Supp. 608, 622 n. 10 (E.D.Pa.), *aff'd,* 284 F.2d 162 (3d Cir.1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961)).

The statute explicitly authorizes an *ex parte* determination of "good cause." The better course, however, is to give union officials an opportunity to show that good cause is lacking so that the court is provided with a complete presentation of the facts and the parties' positions. *Dinko v. Wall,* 531 F.2d 68, 73 (2d Cir.1976); *O'Connor v. Freyman,* 121 LRRM 2387, 2390 (D.D.C.1985) [available on WESTLAW, 1985 WL 121]; *Penuelas v. Moreno,* 198 F.Supp. 441, 449 (S.D.Cal.1961). The same procedural result is reached when, as in this case, the district court determines *ex parte* there is good cause but then allows defendants to move to vacate the order. *Dinko,* 531 F.2d at 73; *O'Connor,* 121 LRRM at 2390. The *Dinko* court explicitly approved of this practice as a means of effectuating the underlying purposes of the section 501(b) "good cause" requirement. *Dinko,* 531 F.2d at 74.

"Good cause" under section 501(b) has been construed to mean "plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence." *Dinko,* 531 F.2d at 75; *O'Connor,* 121 LRRM at 2390; *Local 314 v. National Post Office Mail Handlers,* 572 F.Supp. 133, 139 (E.D.Mo.1983); *Sabey v. Steelworkers Local 12230,* 113 LRRM 3603, 3607 (W.D.N.Y.1982). The court may look beyond the allegations in the complaint and take all the facts and circumstances into consideration in determining whether good cause has been shown. *Purcell v. Keane,* 406 F.2d 1195, 1200 (3d Cir.1969). Still, the good cause determination is not meant to "require the resolution of complex questions of law," which should be considered on motion for summary judgment, or "the determination of a genuine issue of material fact," which is beyond the scope of summary judgment. *Horner v. Ferron,* 362 F.2d 224, 229 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966); *Dinko,* 531 F.2d at 74.

██ I have had an opportunity to consider the affidavits, exhibits and legal arguments of both plaintiffs and defendants. I conclude plaintiffs have not demonstrated "a reasonable likelihood of success." (See *supra* pp. 387–89.) I am fully cognizant my determination that good cause has not been shown will extinguish this cause of action. However, the purpose of this threshold requirement in section 501(b) compels this result.

To prevail in their challenge concerning the expenditures at issue, plaintiffs must establish these practices were violative of the Federation's constitution. They must show it is "patently unreasonable" to inter-

pret the constitution as authorizing the financial assistance at issue. *See Local 334 v. United Ass'n of Journeymen,* 669 F.2d 129, 131 (3d Cir.1982). The standard is narrow as "[c]ourts are reluctant to substitute their judgment for that of union officials in the interpretations of the union's constitution...." *Id.*

As described above, Article XVIII of the constitution prohibits "special financial assistance" to locals unless it is "uniformly accorded all of the other local unions." Since 1933 when it was added to the constitution this provision has been interpreted as a general prohibition against arbitrary discrimination in the extension of financial assistance to locals. The Federation has made it a practice to provide financial assistance to locals to further legitimate union objectives depending on the particular needs of the requesting locals.

This interpretation and application of Article XVIII is not "patently unreasonable." The Executive Council is given broad authority to expend the funds of the Federation for legitimate union purposes. It would, on the other hand, be unreasonable to prohibit the Federation's governing bodies from basing grants of financial assistance on variable but rational factors. It would be unreasonable to require that the Federation match all grants given to certain locals with equal sums for other locals without considering the particular circumstances of each one. This would hamper rather than further the effective functioning of the Federatic. :.

Plaintiffs have not shown "a reasonable likelihood of success" on the merits of their cause of action against the Federation's officers. Two policies underlie the threshold "good cause" requirement of section 501(b): "[1] supervision of union officials in the exercise of their fiduciary obligations and [2] protection, through a preliminary screening mechanism, of the internal operation of unions against unjustified interference or harassment." *Dinko,* 531 F.2d at 75. The dispute which has been brought before me appears to be an internal union matter on which the Convention and Executive Council of the Federation have already acted. The "good cause" requirement of section 501(b) has not been met. Accordingly, Judge Ackerman's *ex parte* order granting plaintiffs leave to sue must be vacated in order to effectuate the purposes of section 501(b).

C. Motion to Dismiss, or for Postponement for Lack of Service

On August 21, 1987, as part of the Order to Show Cause, Judge Ackerman ordered defendants Bower and Dunne be served by August 25, 1987. On August 31, 1987, defenants filed a motion to dismiss or postpone for lack of service, asserting only Mr. Critelli and Mr. Thomas had been served. In their opposition to this motion, plaintiffs assert all the defendants have been properly served, and that defendants Bower and Dunne were served on September 8, 1987.[16]

Defendants Bower and Dunne have had sufficient notice of this motion because they both submitted affidavits to the court on August 31, 1987. Even though the exact requirements of Judge Ackerman's order were not met, all of the parties' arguments, supporting affidavits and exhibits have been filed and considered. It would serve no purpose to delay the disposition of these motions because of a technical violation which no longer exists.

*Conclusion*

Because plaintiffs have failed to establish they have a reasonable likelihood of succeeding on the merits of their claim and because they have failed to establish a basis for the grant of an injunction, their motion for a preliminary injunction is denied.

Plaintiffs have also failed to establish a "good cause" as required to obtain leave to sue under 29 U.S.C. § 501(b). Therefore, defendants' motion to vacate Judge Ackerman's *ex parte* order is granted.[17] Accord-

---

16. During oral argument on September 14, 1987, the court was informed defendant McElfresh had not been served. Plaintiffs were directed to serve Mr. McElfresh immediately.

17. Considering all defendants had sufficient notice to respond to this motion and have done so, the motion to dismiss or postpone this motion is denied.

ingly, this matter is dismissed with prejudice.

